IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JAKE MARSHALL, by and through his | ) | |
| Guardian, Conservator, and Next | ) | |
| Friend, JUDY MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | |
| MELANIE PICKENS, PAULA | ) | NO. 1:11-CV-01110-JEC |
| MERRITT, and FRANCES BOYD, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S BRIEF IN RESPONSE
## TO DEFENDANT FRANCES BOYD'S
## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

COMES NOW Plaintiff Jake Marshall, by and through his Guardian,

Conservator, and Next Friend, Judy Marshall, and files this brief in opposition to

Defendant Frances Boyd's Motion for Partial Judgment on the Pleadings (Doc.

32).

### I.     FACTS

For three years, Defendant Pickens intentionally, maliciously, and repeatedly

abused Plaintiff Jake Marshall, an individual with severe and multiple disabilities

who was unable to go home and tell his parents about the abuse.[1] Verified

Complaint, ¶¶ 1, 6, 12, 13, 20.  For three years, Defendant Pickens "intentionally,

---

[1] Jake has autism, severe mental impairment, speech and language disability, significant motor impairment, epilepsy, and other disabilities, including an inability to talk and difficulty walking.  Verified Complaint, ¶ 1.

maliciously, and willfully kicked Jake repeatedly; pushed him repeatedly; sprayed aerosol spray directly on his body; shoved him into walls and lockers repeatedly; kneed Jake repeatedly; shoved him down to the ground or other areas repeatedly; 'jacked' him up against the wall with his feet off the ground repeatedly; hit him repeatedly on his head, shoulders, hands, and arms; slapped him repeatedly; drug him repeatedly; bit him; threw a camera at his head, causing a bump on his forehead the size of a ping pong ball; pulled his hair repeatedly; threw her shoes at him more than one time; slung him by his shirt repeatedly; threw him into the bus steps; repeatedly pulled his pants so tightly to cause severe discomfort in his groin area; repeatedly forced him to stand when he could not; repeatedly restrained him illegally; repeatedly restrained him too tightly; repeatedly hit the table or desk close to him to scare him; hit him so many times he would cower and flinch when she came near him; and did other acts of physical assault, battery, and physical abuse to Jake." *Id.* at ¶ 13. Pickens did these acts to intentionally, maliciously harm Jake, and her acts did harm Jake. *Id.* Pickens hit Jake so many times, when she would go near him, many times Jake would cower, flinch, and/or cover his head, and one day he came home from school with a fracture between his third and forth fingers. *Id.* at ¶ 17. He and other students in the class even began hitting themselves in their own head, and Jake began hitting his hand on the wall and biting himself. *Id.*

"During the time Pickens was Jake's teacher, Pickens would rub her breasts and buttocks in Jake's face." *Id.* at ¶ 20. "Pickens did this intentionally, maliciously and willfully to sexually abuse Jake, a severely disabled minor who could not report this abuse to his adoptive parents." *Id.*

"During the time Pickens was Jake's teacher, Pickens would intentionally, willfully, and maliciously deprive Jake of food, including but not limited to snacks and lunch, and Jake would come home starved for food, but his adoptive parents did not know why, as Jake, due to his severe mental illness and other disabilities, could not tell his parents." *Id.* at ¶ 23. Over a three year period, Pickens also "would intentionally, willfully, and maliciously deprive Jake of education by repeatedly placing him in a room all by himself for hours and hours a day and sometimes almost an entire school day." *Id.* at ¶ 24. "Pickens would deprive Jake of an education by leaving him alone in a room restrained and confined in a Rifton chair and as much as three or more times a school week and sometimes every day of the school week." *Id.* "On May 21, 2007, Pickens placed Jake in a room by himself secured to a Rifton chair reportedly for most of the school day and while he was so confined and abandoned, he spread his feces on himself, the chair, the tray, and the floor and/or carpet." *Id.* at ¶ 31. "One Fulton County School District employee stated that Jake had feces all over himself, including on his face, in his ears, in his eyes, and in his mouth." *Id.*

Over a three year period of time, Pickens also called Jake a "little s—t," a "s—t," a "f—ker," and a "little f—ker." *Id.* at ¶ 37.  "The initials omitted from the prior sentence are, in order, "hi," "hi," "uc," "uc." *Id.* As well to all of the above, Pickens constantly screamed at Jake in his face, made fun of and mocked Jake, talked negatively about him to others in front of him, and intentionally and maliciously passed gas on Jake and burped in Jake's face.  *Id.* at ¶¶ 38, 39, 41.  The horrific, ongoing abuse was so bad, Pickens would actually seek Jake out when he was not in Pickens' class so she could upset and harass him.  *Id.* at ¶ 42.  Pickens also subjected Jake to witnessing her abuse other disabled students.  *Id.* at ¶ 40.

Due to the physical assault, battery, abuse, intentional infliction of extreme emotional distress, abandonment, and sexual abuse Jake *repeatedly suffered* during a three year period, Jake was severely harmed physically, educationally, developmentally, socially, and emotionally. *Id.* at ¶¶ 19, 22, 29, 35, 45, 47-48, 51, 54, 56-57.

"The actions of Pickens were so outrageous and egregious, Fulton County School District employees who witnessed Pickens' actions described the situation on tape to the Professional Standards Commission investigator as follows: 'it was just terrible,' her 'teacher ethics were awful,' 'not acceptable,' 'I could not sleep at night,' 'I do hate it,' 'It is a shame,' 'Does somebody have to die,' 'she got a kick out of it [aggravating and physically assaulting Jake],' 'I hated it.  It had to stop

somewhere. It really had to stop,' 'wherever we are, Jake got it,' 'it's pretty ugly,' 'I want no part of it,' 'she kicked him [Jake] all the time,' 'I told her over and over – you are breaking the law,' 'It was awful. I hated working there, and I'd never go back there,' 'the whole situation was horrendous,' 'it was just horrendous,' 'pitiful,' 'so bad,' 'it was a constant thing . . . even up to the last event . . . the same things happened every single time,' 'hate the situation happened,' 'there is nothing to undo [the harm to Jake],' 'it's so upsetting,' 'it's very disheartening and upsetting,' 'I hate it,' 'it's really upsetting to relive the accounts,' 'I felt so bad,' 'kicking him on the ground,' 'I did not want to come back. I would feel so bad,' and more." *Id.* at ¶ 43.

During the three years when Jake attended Hopewell and was so maliciously and repeatedly abused and harmed by Pickens, Boyd was the principal of Hopewell. *Id.* at ¶¶ 7, 13, 17, 20, 23, 24, 37-43. During this three-year period, "Fulton County School District employees repeatedly informed . . . Boyd about the ongoing improper acts set forth [above], yet . . . Boyd repeatedly told these employees that Pickens' abuse was being addressed when in fact it was not being addressed and Merritt and Boyd were not reporting it, as required by law." *Id.* at ¶ 60. Defendant Merritt reported that Boyd "absolutely knew" about Pickens' ongoing abuse of Jake, as set forth above. *Id.* at ¶ 62. Boyd knew "about the ongoing abuse and sanctioned and allowed it instead of stopping it by report or

otherwise." *Id.* at ¶ 63. "Boyd told one Fulton County School District employee that she 'did not care for that group or type of kid,' meaning Jake and the children in his class, and that 'they should have pulled the plug on these kids a long time ago.'" *Id.* at ¶ 64. "Boyd told one Fulton County School District employee that she did not 'see why we have to have these kids because they can't really do anything.'" *Id.* at ¶ 65. "This employee reported to the Georgia Professional Standards Commission, as did another employee, that Boyd did not like the disabled children at Hopewell at all." *Id.*

"Boyd intimidated, harassed, and threatened employees who would report Pickens' acts set forth herein." *Id.* at ¶ 66. Boyd not only failed to report the abuse or stop or prevent it, she prevented other employees from properly reporting the abuse and prevented investigation into the abuse. *Id.* at ¶¶ 68, 70. Boyd intentionally, maliciously, and willfully contributed to the abuse of Jake by Pickens by failing to report, prevent, or have reported the horrific abuse over a three-year period of time. *Id.* at ¶¶ 70, 71. Boyd conspired with the other named Defendants "and acted in concert to accomplish and continue for years the unlawful acts set forth herein and did so by unlawful means by harming Jake as set forth herein and by hiding, lying about, concealing, not reporting, preventing others from reporting this harm by intimidation, deceit, threats, harassment, and retaliation so as to intentionally, willfully, and unlawfully harm Jake and ensure this harm was not

prevented but yet continued for three years." *Id.* at ¶ 77. Boyd "did not disclose to Jake's parents but instead withheld and misrepresented Pickens' malicious, willful, intentional, unlawful acts to Jake." *Id.* at ¶ 78. Boyd conspired and acted in concert "to willfully, intentionally, and maliciously physically and sexually abuse, deprive, violate, harm, and discriminate against Jake." *Id.* at ¶ 79. "In Fall 2004, a Fulton County School District nurse reported that Pickens hit Jake in the head hard enough to move his head, but Boyd and Pickens reported that Pickens only tapped him in the head." *Id.* at ¶ 82. Boyd "withheld the constant and repeated reports of malicious, willful, intentional abuse, harm, and deprivation by Pickens of Jake and took efforts to ensure no one else reported this severe, ongoing abuse, harm, and deprivation to Jake's parents, administrators, the Department of Family and Children Services, or any other state agencies with jurisdiction." *Id.* at ¶ 84. "When Fulton County School District employees would report to . . . Boyd the ongoing, horrific abuse . . . and unlawful acts by Pickens to Jake as set forth herein, . . . Boyd would falsely tell the employees that the situation was being handled to ensure the matter would not be properly reported, no relief would be given to Jake, and Jake's parents would not be informed but instead misled about Pickens and what was going on in the placement." *Id.* at ¶ 85. Boyd's "wrongful, deceitful, intentional misrepresentations and omission perpetuated the fraud and severe, ongoing harm to Jake." *Id.* "When Pickens abandoned, harmed, illegally confined

and imprisoned Jake and deprived and abused him on May 21, 2007, Boyd again tried to cover up and hide Pickens' abuse and harm." *Id.* at ¶ 86. Boyd actually "lied and said it was the first time Pickens had ever been reported for any wrongdoing." *Id.* at ¶ 87. Boyd also "tried to ensure Jake's parents were not informed and when she could not prevent this, she ensured that they were only informed of this one act and not all the other wrongful, harmful, unlawful acts set forth herein." *Id.* at ¶ 88. Boyd "intentionally, knowingly, and with malice misrepresented how Pickens treated Jake to his parents and others and intentionally, knowingly, and with malice wrongfully omitted the abuse, harm, deprivation and other unlawful acts of Pickens to Jake, and . . . did so to induce Jake's parents and others to rely upon this fraud, which they justifiably did, resulting in extensive damage and harm to Jake." *Id.* at ¶ 90.

## II. <u>RELEVANT JUDICIAL HISTORY</u>

On February 24, 2011, Plaintiff filed this suit in the Superior Court of Fulton County. Verified Complaint. On April 6, 2011, Defendant Pickens filed a Notice of Removal (Doc. 1). Plaintiff Jake Marshall filed a Motion to Remand (Doc. 8) and a Motion to Stay (Doc. 9) on April 26, 2011. On August 2, 2011, the Court granted by minute order Plaintiff's motion to stay, and on January 3, 2012, Plaintiff's motion to remand was denied. Defendant Boyd filed a motion for partial judgment on the pleadings (Doc. 32) pursuant to Fed. R. Civ. P. 12 (c) on

January 11, 2012, and on January 31, 2012, the Court granted by Order (Doc. 35) a continuance to Plaintiff for replying to Boyd's motion until and through February 28, 2012.

### III.    STANDARD UNDER RULE 12 (c)

"Judgment on the pleadings is appropriate only when the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Moore v. Liberty Nat'l Life Ins. Co.,* 267 F.3d 1209, 1213 (11th Cir. 2001) (internal marks omitted). Federal district courts have applied a "fairly restrictive standard in ruling on motions for judgment on the pleadings." 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368 (1990). When a motion for judgment on the pleadings is filed, the court "accept[s] the facts in the Verified Complaint as true and view[s] them in the light most favorable to the nonmoving party." *Horsely v. Feldt,* 304 F.3d 1125, 1131 (11th Cir. 2002). Accordingly, a defendant's motion must be denied unless it appears "beyond doubt" that a plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957).

## IV.   LEGAL CITATION AND ARGUMENT

## A.  Plaintiff's State Constitutional Claims Should Not Be Dismissed

Defendant Boyd wrongfully asserts that Plaintiff does not seek relief against

Boyd for her violation of his state constitutional rights and thus those claims

should be dismissed.  Plaintiff, however, asserted in his Verified Complaint that

"Boyd's intentional, malicious, and willful contribution to the acts committed in

and harm caused to Jake by Pickens as set forth in **Counts One through Thirteen**

herein damaged and injured Jake severely, and he is entitled to recover all damages

allowed by law, including but not limited to punitive damages." Verified

Complaint, ¶ 71 (emphasis added).  Count 12, which is listed, is the "Intentional,

Malicious, Willful Denial of Constitutional Rights," and states those constitutional

rights as follows:  the right to due process, the right to equal protections under the

law, and the right to be free from cruel and unusual punishment.  Verified

Complaint, p. 13 and ¶ 53.  Plaintiff further alleged in Count 17 that Boyd and the

other "defendants herein conspired together and acted in concert to accomplish and

continue for years the unlawful acts set forth herein and did so by unlawful means

by harming Jake as set forth herein and by hiding, lying about, concealing, not

reporting, preventing others from reporting this harm by intimidation, deceit,

threats, harassment, and retaliation so as to intentionally, willfully, and unlawfully

harm Jake and ensure this harm was not prevented but yet continued for three years." *Id.* at ¶ 77. The heading to Count 17 is, in part, "Intentional, Malicious, Willful Conspiracy to … Deny Constitutional Rights of a Minor." Defendant Boyd's motion for partial judgment on the pleadings regarding Plaintiff's state constitutional claims should be denied.

## 1.    Georgia Constitution - Cruel and Unusual Punishment

Pursuant to the Constitution of the State of Georgia, Art. I, Sec. I, Par. XVII, entitled "Bail; fines; punishment; arrest, abuse of prisoners," "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted; nor shall any person be abused in being arrested, while under arrest, or in prison." Thus, in Georgia, from the plain language of the state constitution, freedom from cruel and unusual punishments is not limited to prisoners or those arrested, as there is a separate protection for that class of individuals. Defendant Pickens argues that based on dicta from the United States Supreme Court in *Ingraham v. Wright,* 430 U.S. 651 (1977) that Plaintiff Jake Marshall cannot recover under the State of Georgia's constitutional prohibition of cruel and unusual punishment. Such an argument misstates Georgia law.

In *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 365 S.E.2d 827 (1988), the Georgia Supreme Court explained that the excessive fines clause of Art. I, Sec. I,

Par. XVII of the Georgia Constitution applied not just to criminal cases but also to civil cases. In so holding, the court adopted the position of the <u>dissent</u> in *Ingraham v. Wright,* 430 U.S 651 (1977), which disagreed with the holding that the United States constitution prohibition of cruel and unusual punishment did not prevent excessive corporal punishment. The Georgia Supreme Court in *Colonial Pipeline Co.* established that the Georgia Constitution's prohibition against cruel and unusual punishment did not just apply just to those convicted of crimes:

> Justice White writing for the dissent in *Ingraham* stated, "[t]he Court would have us believe ... that there is a recognized distinction between criminal and noncriminal punishment for purposes of the Eighth Amendment. This is plainly wrong." Id., 686. Justice White cited *Trop v. Dulles*, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion), for the appropriate test: "The relevant inquiry is not whether the offenses for which a punishment is inflicted has been labeled as criminal, but whether the purpose of the deprivation is among those ordinarily associated with punishment, such as retribution, rehabilitation, or deterrence." *Ingraham*, supra, 430 U.S. at 686-87, 97 S.Ct. at 1420-1421 (White, J., dissenting). . . .
>
> "[T]he constitutional prohibition is against cruel and unusual punishments; nowhere is that prohibition limited or modified by the language of the Constitution." *Ingraham*, 430 U.S. at 685, 97 S.Ct. at 1420 (White, J., dissenting.) (Emphasis in original.) In comparing the Eighth Amendment with other Amendments of the United States Constitution, we note that the others include limitations. The Fifth Amendment provides, "No person shall be held to answer to a capital, or otherwise infamous crime ... nor shall he be compelled in any criminal case to be a witness against himself...." The Sixth Amendment states, "In all criminal prosecutions...." In light of the fact that the Eighth Amendment was placed between the Seventh Amendment which provides for trial by jury in civil cases and the Ninth Amendment which is a reservation of rights of the people, the absence of any language limiting the Eighth Amendment to criminal cases is especially noticeable. . . .

Id. at 830 and 836 n. 3.

Thus, contrary to Defendant Boyd's assertion that she cannot be held liable under the Georgia Constitution for cruel and unusual punishment of Jake Marshall for three years because Jake was not convicted of a crime, she legally can and should be.  *See also Carey Canada, Inc. v. Hinely,* 181 Ga. App. 364, 352 S.E.2d 398 (1987) (The appellate court analyzed whether a civil contempt order punishing a party to a civil suit was cruel and unusual punishment in violation of the Georgia constitution.), *partially reversed on other grounds*, 257 Ga. 150, 365 S.E.2d 202 (1988) (the State supreme court held the contempt order of the civil litigant was criminal contempt, but did not address the prior application of the facts to the state constitutional prohibition against cruel and unusual punishment in the civil context).

### 2.      <u>Georgia Constitution – Equal Protection of the Law</u>

Pursuant to the Georgia Constitution, Art. I, Sec. I, Par. II, "[n]o person shall be denied the equal protection of the laws." Boyd asserts that Plaintiff's claim for denial of his rights to equal protection must fail because he allegedly did not assert he was treated differently from any other similarly situated student.  Plaintiff asserted, however, in his Verified Complaint that he was "intentionally, maliciously, and willfully discriminated against . . . based upon his disabilities." Verified Complaint, ¶ 56.  Plaintiff asserted he was subjected to the harm detailed in the Verified Complaint "due to his disabilities." *Id.*  Plaintiff also averred in the

Verified Complaint that Boyd "did not care for that group or type of kid," meaning Jake and the other disabled children in his class, and that "they should have pulled the plug on these kids a long time ago." *Id.* at ¶ 64. According to the Verified Complaint, Boyd could not understand why she even had to educate children with severe disabilities like Jake, and it was averred that one employee reported that Boyd "did not like the disabled children at Hopewell at all." *Id.* at ¶ 65. In addition, Count 17 of the Verified Complaint is, in part, "intentional, malicious, willful, conspiracy to discriminate against a disabled child." Thus, it is clear that Plaintiff was deprived his right to equal protection of the law because he was disabled, and he (as well as other disabled students) was treated differently from the non-disabled students.

A "plaintiff is not held to a very high standard on a motion to dismiss." *Wagner v. Daewoo Heavy Industries America Corp.,* 289 F.3d 1268 (11th Cir. 2002). In this case, the Verified Complaint was filed in state court and removed to federal court. *See Holloway v. Dougherty Cty. Sch. System,* 157 Ga. App. 251, 277 S.E.2d 251, 254 (1981) ("It must be remembered that the objective of the CPA is to avoid technicalities and to require only a short and plain statement of the claim that will give the defendant fair notice of what the claim is and a general indication of the type of litigation involved."). Should there be some technical issue with pleading specificity, Plaintiff should be allowed leave to amend his complaint and

respectfully requests the right to do so.

### 3.    Georgia Constitution – Due Process of the Law

Defendant does not argue that Plaintiff has failed to state a cause of action under his state constitutional right to due process of the law.

### B.    Boyd is Liable For Acting with Defendants to Harm Plaintiff

Defendant Boyd argues no private cause of action exists for her willful, continued, malicious violation of O.C.G.A. § 19-7-5.  Boyd, however, ignores the fact that it is alleged and, by law, she owed Plaintiff a duty of care, and her intentional acts to allow, sanction, and permit violent, horrific, ongoing harm and abuse to Plaintiff make her liable for her actions.

"As a general rule, a person who undertakes the control and supervision of a child, even without compensation, has the duty to use reasonable care to protect the child from injury." *Wallace v. Boys Club of Albany, Georgia, Inc.,* 211 Ga. App. 534, 535, 439 S.E.2d 746, 748 (1993).  *See also Thurman v. Applebrook Country Dayschool, Inc.,* 278 Ga. 784, 604 S.E.2d 832 (2004); *Bull Street Church of Christ v. Jensen,* 233 Ga. App. 96, 504 S.E.2d 1 (1998).  *See also Thurmond v. Richmond Cty. Bd. of Educ.,* 207 Ga. App. 437, 428 S.E.2d 392, 396 (1993) (Although plaintiffs did not prove in that case the child's teacher breached her duty of care, the court did recognize the teacher owed the child a duty of care.).  In addition, as an educator in Georgia, Boyd was required not only pursuant to Section 19-7-5 to

report the abuse of Jake so it would stop, she was required to report it to the Georgia Professional Standards Commission. Yet, instead of using reasonable care regarding Plaintiff and instead of reporting the abuse to numerous agencies, as required by law and her ethical requirements as an educator, Boyd conspired with Pickens and Defendant Merritt *and took affirmative acts* to ensure the shocking abuse of Jake for **three years.** *See* Verified Complaint, ¶¶ 74,77, 82, 84-88, 90 (It is alleged that Boyd hid, lied about, concealed, failed to report, prevented others from reporting, and intimidated, threatened, harassed, and retaliated against others so they would not report the harm to Plaintiff or protect Plaintiff.) .

### C. Boyd Is Not Immune From Liability

In Georgia, the doctrine of qualified immunity provides, in pertinent part, that "all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. Art. I, Sec. II, Par. IX (d). When a plaintiff alleges that a state officer or agent acted willfully and intentionally, a motion to dismiss must be denied. *Holloway v. Dougherty Cty. Sch. System,* 157 Ga. App. 251, 277 S.E.2d 251 (2007).

In this case, Plaintiff did much more than merely allege Boyd acted maliciously and intentionally to harm Plaintiff. Instead, Plaintiff asserted in a Verified Complaint that Boyd intentionally refused to report the horrific abuse of Jake for three years; that she lied to other employees to prevent them from reporting the abuse; that she knew about and sanctioned the abuse of Jake, a severely disabled child who could not tell his parents he was being abused daily at school; that she did not care for Jake because he was disabled and she felt they should have pulled the plug on Jake "a long time ago;" that she did not believe there was any duty to educate Jake because he, according to Boyd, could not do anything; that she did not like the disabled students at Hopewell, where Jake attended; that she intimidated, harassed, threatened, and retaliated against employees who would report the abuse of Jake; that she hid, promoted, and allowed the outrageous harm to Jake; that she acted in concert with Pickens to harm Jake; that she misrepresented intentionally what happened to Jake to his parents so they would not learn of the horrific abuse of their adopted child; that she covered up the abuse of Jake; that she lied about the abuse of Jake; and that all of this behavior was done willfully, intentionally, and maliciously. Verified Complaint, ¶¶ 59-68, 70, 74, 74, 78-79, 82-88 (lying about, hiding, and covering up abuse as well as threatening, harassing, intimidating, and retaliating against other so the abuse can continue are all clearly intentional and malicious acts).

Any individual who takes deliberate, intentional, wrongful, and concerted actions with others to harm and continue this harm to a disabled child for three years in clear violation of numerous criminal and civil laws as well as state professional employment requirements cannot claim protection from this Court or any other court for such willful, intentional acts based upon an alleged right to qualified immunity, for the doctrine of qualified immunity does not protect against such behavior. *See Nichols v. Prather,* 286 Ga. App. 889, 896, 650 S.E.2d 380 (2007) (A public officer or employee may be liable "for ministerial acts negligently performed or acts performed with malice or intent to injure."); *Moreland v. Poss,* 171 Ga. App. 733, 320 S.E.2d 841 (1984), citing *Johnson v. Duffy,* 588 F.2d 740, 743-744 (9th Cir. 1978) (The requisite causal connection of the deprivation of one's constitutional rights "'can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'"). The cases cited by Defendant Boyd do not establish Boyd is immune from liability in this case.

In addition, it is well established that a supervisory official is not immune when she "personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir.

2003), citing *Braddy v. Florida Dep't of Labor & Employment Sec.,* 133 F.3d 797, 802 (11th Cir. 1998). A causal connection can be established by, inter alia, "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* at 1235.

### D. Plaintiff's State Cause of Action for Fraud Should Not Be Dismissed

Boyd argues that Jake's state fraud claims should be dismissed based upon federal law. Such is not legally appropriate, for even though Georgia does have a heightened pleading standard for fraud, it does not comport with that set forth by the federal courts. Boyd also argues that Plaintiff failed to allege what statements were fraudulent and what actions Pickens sought to induce. This is not correct. In paragraph 82 of his Verified Complaint, Jake explains that Boyd "reported [despite the fact Pickens had hit Jake so hard in the head it moved his head] that "Pickens only lightly tapped him in the head." Verified Complaint, ¶ 82. Jake further asserts that Boyd, along with the other two Defendants, "withheld that Pickens had abused other children with disabilities, including ones in Jake's class." *Id.* Other specific omissions withheld were also pled, including the fact that "[a]ll defendants herein wrongfully withheld from Jake's parents and others that Pickens did not undergo anger management training as required and that she even was mandated to do so." *Id.* at ¶ 83. Jake specifically pled that "[a]ll defendants herein withheld the

constant and repeated reports of malicious, willful, intentional abuse, harm, and deprivation by Pickens of Jake and took efforts to ensure no one else reported this severe, ongoing abuse, harm, and deprivation to Jake's parents, administrators, the Department of Family and Children Services, or any other state agencies with jurisdiction." *Id.* at ¶ 84. This undeniably sets forth the fraud by statements and omissions.

In addition, Jake did in fact state what actions Boyd and the other Defendants sought to induce. In paragraph 90 of the Verified Complaint, Jake explains as follows: "All defendants herein intentionally, knowingly, and with malice misrepresented how Pickens treated Jake to his parents and others and intentionally, knowingly, and with malice wrongfully omitted the abuse, harm, deprivation and other unlawful acts of Pickens to Jake, and they did so to induce Jake's parents and others to rely upon this fraud, which they justifiably did, resulting in extensive damage and harm to Jake." Jake also asserted in paragraph 91 as follows: "Defendants' fraud to willfully, intentionally, and maliciously physically and sexually abuse, deprive, violate, harm, and discriminate against Jake in violation of the law and his rights caused Jake harm, and he is entitled to recover all damages allowed by law, including but not limited to punitive damages."

This more than meets the federal test of pleadings, and Plaintiff only had to meet the state standard, which he clearly did. Jake's cause of action for fraud should not be dismissed. *See Morton v. Wallace,* 177 Ga. 856, 171 S.E. 720 (1933) ("Fraud may be actual or constructive. Actual fraud consists of any kind of artifice by which another is deceived. Constructive fraud consists of any act or omission or commission contrary to legal or equitable duty, trust or confidence just reposed, which is contrary to good conscience and operates to the injury of another."). Defendant Boyd's assertions that Plaintiff had to allege to whom Boyd made knowingly false statements (apparently other than the employees and parents of Jake so they would not report or know), had to allege the complete context of the alleged incident (apparently other than the abuse of Jake), had to allege how the anger management training came about, had to allege who specifically Boyd was informed by of the three-year abuse (apparently other than by Hopewell employees), and other such information did not have to be alleged in order for Plaintiff to state a cause of action for fraud.

Even if this Court found that his claim was not pled with particularity, Jake should be allowed leave to file an amended Verified Complaint, especially given he filed his suit in state court, not federal court.

## V.    <u>CONCLUSION</u>

Defendant Boyd's motion should be denied.

## VI.   CERTIFICATION

Pursuant to Local Rule 7.1 (D), the undersigned hereby certifies that the within and foregoing Brief was prepared with Times New Roman 14-point font, as permitted by Local Rule 5.1 (C).

This the 28th day of February 2012.

 /s/ Chris E. Vance
Chris E. Vance
Ga. Bar No. 724199

Counsel for Plaintiff

**CHRIS E. VANCE, P.C.**
Suite 100
2415 Oak Grove Valley Road
Atlanta, GA 30345
Tel:  (404) 320-6672
Fax: (404) 320-3412

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Plaintiff's Brief** has been served

electronically upon counsel for all Defendants.


This 28th day of February 2012.


 /s/  Chris E. Vance
Chris E. Vance
Ga. Bar No. 724199

Counsel for Plaintiff


**CHRIS E. VANCE, P.C.**
Suite 100
2415 Oak Grove Valley Road
Atlanta, GA 30345
Tel:  (404) 320-6672
Fax: (404) 320-3412