IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JAKE MARSHALL, by and through his Guardian, Conservator, and Next Friend, JUDY MARSHALL, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE |
| MELANIE PICKENS, PAULA MERRITT, and FRANCES BOYD, | ) ) ) ) | NO. 1:11-CV-01110-WBH |
| Defendants. | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANT MERRITT'S MOTION
TO EXCLUDE TESTIMONY OF EXPERT JEAN M. ESTES**

COMES NOW Plaintiff Jake Marshall (hereinafter "Jake"), by and through his Guardian, Conservator, and Next Friend, Judy Marshall, and, files this brief in opposition to Defendant Merritt's motion to exclude testimony of expert Jean M. Estes. [Doc. 249].  For the reasons set forth herein, Defendant Merritt's motion should be denied.

**I.      Relevant Factual Information**

Jean M. Estes received her B.A. in psychology and her J.D. from Buffalo Law School in New York in 1982.  Deposition of Jean Marie Estes, April 4, 2013, attached hereto as Exhibit A (hereinafter "Estes Dep., Ex. A"), p. lines 4-12.  Ms. Estes specializes in special education, special education procedures and practice,

and special education policy, regulations, and law and has done so now for 30 years.  *Id.* at p. 14, lines 16-21, p. 20, lines 12-14, p. 22, lines 6-8 and line 20 to p. 27, line 9, p. 40, line 21 to p. 44, line 13, p. 45, line 7 to p. 46, line 18, p. 101, lines 5-7.

In 1984, Ms. Estes was hired by the Georgia Advocacy Office ("GAO") as a staff attorney and advocate for disabled individuals.  *Id.* at p. 13, line 24 to p. 14, line 21; Disclosure of Expert Testimony by Jean Estes, attached hereto as Exhibit B (hereinafter "Estes Disclosure, Ex. B"), p. 38.  The GAO is the federally mandated and funded Protection and Advocacy agency ("P&A") for the State of Georgia.[1]  Estes Dep., p. 15, lines 9-12, p. 21, lines 21-25.

During her 20 year tenure with the GAO, Ms. Estes was responsible for advocating and protecting individuals with developmental disabilities, assisting parents in obtaining an appropriate education for their disabled children, and advocating and assisting disabled individuals who had been abused.  Estes Dep.,

---

[1] There is a P&A in each state, and they are funded and mandated pursuant to the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15041 *et seq.*; Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. §10801 *et seq.*; Protection and Advocacy of Individual Rights, 29 U.S.C. §794e; Assistive Technology for Individuals with Disabilities, 29 U.S.C. §3012(a)(1); Protection and Advocacy for Beneficiaries of Social Security, Ticket to Work and Work Incentives Improvement Act, 42 U.S.C. § 320b-21; Protection and Advocacy for Individuals with Traumatic Brain Injury, 42 USC § 300d-53; and Protection and Advocacy for Voting Access, 42 USC § 15461-1546

Ex. A, p. 14, line 16 to p. 21, line 14.  When Ms. Estes first began working at the GAO, 50 percent of her responsibilities involved her advocating and assisting disabled children and their parents in special education matters.  *Id.* at p. 17, line 25 to p. 18, line 21.  During the last 15 or 16 years of Ms. Estes' service with the GAO, she spent 100 percent of her time advocating for, assisting, and representing disabled children and their parents in all areas of special education.  *Id.* at p. 21, line 19 to p. 22, line 8, p. 25, line 2.

    During the 20 years Ms. Estes was with the GAO, she assisted, represented, and advocated for literally thousands of disabled children and their parents involving special education matters.  Estes Disclosure, Ex. B, p. 38.  In doing so, Ms. Estes worked with at least 100 different local educational agencies and learned the educational systems throughout the state of Georgia, attending approximately 100 to 200 Individualized Education Program ("IEP") meetings for disabled children **a year**.  *Id.*; Estes Dep., Ex. A, p. 26, lines 10-20, p. 102, lines 13-15.  Eighty percent of Ms. Estes' time with GAO was spent attending IEP meetings for disabled children and their parents, and she has probably attended more IEP meetings than anyone else in the State of Georgia.  *Id.*; Estes Dep., Ex. A, p. 100, lines 24-25.  In preparing for IEP meetings, Ms. Estes would review educational and evaluative records, including evaluations from occupational therapists, speech therapists, physical therapists, handwriting specialists, psychologists, medical

doctors, and neurologists.  *Id.* at p. 27, lines 1-9.  Ms. Estes worked with not only school board attorneys in assisting and advocating for disabled children in school settings, but also with special education directors.  *Id.* at p. 25, line 24 to p. 26, line 5.

While at the GAO, Ms. Estes provided technical information regarding special education to thousands of family members of disabled children statewide, and she strategized and implemented remedies based on her extensive knowledge of service systems for disabled children and special education policies, regulations, and law.  Estes Disclosures, Ex. B, p. 38.

For over 20 years, Ms. Estes has conducted training and presented to parents, educators, and other professionals, including advocates and attorneys, in special education and special education advocacy and law in many different forums.  Estes Dep., p. 40, line 17 to p. 47, line 19.  Much of the training Ms. Estes' has provided has involved IEP's.  *Id.*  Ms. Estes has presented at and attended conferences where educators from all over the state come together and share information about different strategies and different projects that they are working on in their school districts regarding children with disabilities.  *Id.* at p. 44, lines 3-13.  Ms. Estes has also presented at continuing legal education seminars on IEP's and special education.  *Id.* at p. 44, line 24 to p. 45, line 4.

When Ms. Estes trains or presents, she covers special education topics such as IEP's, evaluations, educational goals and objectives, medical plans, behavioral plans, and special education dispute resolution. *Id.* at p. 45, lines 3-14.

Ms. Estes has written or otherwise created numerous materials to assist parents and others with special education procedures and special education law. Estes Disclosures, Ex. B, p. 38.  One such work was a booklet entitled "Advocating for Your Child's Education," which contains information provided by Ms. Estes on special education and materials used with permission, such as the Georgia Department of Education IEP form.  Estes Dep., Ex. A, p. 42, lines 3-14.

In representing and advocating for disabled children when she was with the GAO, Ms. Estes worked with children with severe and profound disabilities who were nonverbal, and she has had involvement with abused disabled children in the school system.  *Id.* at p. 50, lines 3-7, 11-14, p. 50, line 23 to p. 51, line 8 (Ms. Estes could not recall all the cases she was involved in regarding abuse of a disabled child while she was at the GAO, but she was involved in abuse matters). In private practice, Ms. Estes has also been involved in assisting and advocating for children with severe and/or profound disabilities who have been abused. Id. at p. 55, line 12 to p. 56, line 14.  As explained by Ms. Estes in her deposition, she has represented "many children who were severely or profoundly disabled, and there have been frequent allegations of abuse in those matters." *Id.* at p. 58, lines

5

14-17. As part of her extensive experience in the special education field, Ms. Estes makes recommendations for disabled children regarding placement. Id. at p. 116, p. 25 to p. 117, line 4.

In forming her opinions as an expert in special education in this case, Ms. Estes reviewed extensive documentation, including Jake's Fulton County School District ("FCSD") educational records, Rabun County School District educational records, medical records, Marcus Institute and Laurel Heights records, Dr. Maddox's evaluation of Jake, the special education due process hearing Jake's parents filed, pleadings in this case, depositions of witnesses in this matter, the Georgia Professional Standards Commission ("GaPSC") investigative reports involving Defendants Pickens and Boyd and witness statements (the GaPSC report for Pickens includes the FCSD investigative report of Pickens), the Georgia audit of the Georgia psychoeducational program now called "GNETS," and the special education due process hearing, pleadings, evidence, and order for Alex Williams, whom Pickens abused. Estes Disclosures, Ex. B, pp. 1-2; Estes Dep., Ex. A, p. 115, line 25 to p. 116, line 5. Ms. Estes has a comprehensive and thorough understanding of the facts in this matter. *See, e.g.* Estes Dep., Ex. A, p. 82, line 23 to p. 83, line 7, p. 84, lines 10-18, p. 87, line 15 to p. 89, line 10, p. 90, lines 2-25, p. 118, lines 10-16; Estes Disclosure, Ex. B; Estes Rebuttal Report, attached hereto as Exhibit C (hereinafter "Estes Rebuttal, Ex. C.").

In addition to spending more than 25 hours reviewing relevant documentation, Ms. Estes interviewed Jake's mother, including attending an 8-hour meeting with Ms. Marshall and parents of other children whom Pickens abused.  Estes Disclosure, Ex. B, p. 2; Estes Dep., Ex. A, p. 66, lines 6-10, p. 67, lines 18-24.  Ms. Estes also met with Jake when he was at Laurel Heights and observed another disabled child (Repheka Persadi) who was abused by Pickens. Estes Dep., Ex. A, p. 69, line 18 to p. 70, line 11; Estes Disclosure, Ex. B, p. 2.

## II.   Legal Argument and Citation of Law

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

> The rule is broadly phrased. The fields of knowledge which may be drawn upon are not limited merely to the "scientific" and "technical" but extend to all "specialized" knowledge.  Similarly, the expert is viewed, not in a narrow sense, but as a person qualified by "knowledge, skill, experience, training or education." Thus within the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called "skilled" witnesses, such as bankers or landowners testifying to land values.

Fed. R. Evid. 702, Notes of Advisory Committee on Proposed Rules.

In determining whether one is an expert and whether his testimony should be admitted,

> *Daubert* itself emphasized that the factors were neither exclusive nor dispositive. Other cases have recognized that not all of the specific *Daubert* factors can apply to every type of expert testimony. In addition to *Kumho*, 119 S.Ct. at 1175, *see Tyus v. Urban Search Management*, 102 F.3d 256 (7th Cir. 1996) (noting that the factors mentioned by the Court in *Daubert* do not neatly apply to expert testimony from a sociologist). *See also Kannankeril v. Terminix Int'l, Inc*., 128 F.3d 802, 809 (3d Cir. 1997) (holding that lack of peer review or publication was not dispositive where the expert's opinion was supported by "widely accepted scientific knowledge"). … A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). As the Court in *Daubert* stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595. Likewise, this amendment is not intended to provide an excuse for an automatic challenge to the testimony of every expert. *See Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1176 (1999) (noting that the trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.").

Fed. R. Evid. 702, Committee Notes on Rules – 2000 Amendment.

### A. **Ms. Estes is Qualified As an Expert**

Defendant Merritt argues Ms. Estes is a special education lawyer and thus not an expert. This is not so. Ms. Estes is highly experienced and skilled in

special education, as Merritt's counsel knows.  The generalized headings in Ms. Estes' report nor its format make Ms. Estes any less of a highly skilled expert in special education.  Furthermore, that Ms. Estes bases her opinions upon the facts and data of this case do not make her any less of an expert in special education, and such is actually what experts are supposed to do.

     Given Ms. Estes' training, experience, and skill, there can be no doubt that Ms. Estes is qualified to give her expert opinions regarding the facts of this case and their application to special education and to special education matters Pickens, Merritt, and Boyd have raised, including but not limited to IEP's, IEP goals and objectives, IEP data, BIP's, Jake's special education records, special education procedures and process, disclosure to parents, the collaborative process, placement, least restrictive environment, education of severely and/or profoundly disabled children and their ability to progress when they are not abused, regression in the educational setting, abuse in the educational setting, psychoeducation (GNETS), parental relationship to educators and local educational agencies, developmental disabilities, educational modeling, reinforcer preference assessments, restraint, seclusion, categorical paraprofessionals, and other relevant areas of special education.

     Pickens incredulously argues that although she never did any of the things to Jake that at least 10 eye witnesses say she did, Jake being abused is Jake's

mother's fault because, inter alia, Jake's mother did not agree to a psychoeducational placement. Pickens' also argues she had to do what she did to Jake and that she only did it in good faith. Ms. Estes is experienced and skilled with psychoeducation in Georgia, the IEP process, corporal punishment, FCSD's policies on corporal punishment then and now, BIP's, FBA's, IEP's, behavior and behavior modification in school settings, severe and profound disabilities and the education of children with severe and profound disabilities, behavior specialists, FCSD polices and practice, prior written notice, and other such specialized, technical knowledge that applies to the facts and defendants' arguments in this case that lay persons do not know or understand without expert testimony. Ms. Estes also has very relevant expert opinions regarding what a lead IST ("instructional support teacher") is in the FCSD, what her roles and duties are, what principals' roles and duties are, and the GaPSC ethics requirements for educators, and both Defendant Merritt and Defendant Boyd, beside pointing the finger at each other, make arguments that are antithetical to education and special education, and Ms. Estes has the specialized experience and skill to rebut them.

Given her extensive background, experience, and skill in special education for 30 years, Ms. Estes clearly has the necessary technical, specialized knowledge in special education and has applied that knowledge to the facts of this matter. There is actually no other expert in this case nearly as well trained and skilled in

10

special education and special education procedures and practice than Ms. Estes, who now has 30 years of experience in this field. As such, she is highly qualified as an expert in this case.

Ms. Estes is not just a lawyer; she an advocate for children with disabilities in all areas of special education. Thus, Ms. Estes has specialized and technical knowledge, experience, and skill in assessment of disabled individuals, evaluations, disabilities, therapies, interventions, placements, special education, local educational agencies, and special education operations and procedures. Moreover, Ms. Estes is a trainer and presenter in special education, and she has been doing all of this for 30 years, which is longer than any other individual in Georgia.

In addition, it must be brought to the attention of this Court that Defendant Merritt misstates more than once the facts in this case as they relate to Ms. Estes and her testimony and qualifications as an expert. For example, on page 12 of her motion, Merritt claims that Ms. Estes states her sole qualification to give her expert opinion as being the fact Ms. Estes read Dr. Maddox's and Dr. Mueller's reports. *This is untrue*; Ms. Estes actually repeatedly testified that her expert opinions were based upon her experience, knowledge, and skill in this field. *See, e.g.,* Estes Dep., Ex. A, p. 81, lines 14-16, p. 82, lines 12-18, p. 101, lines 18-22, p. 102, lines 11-15.

### B. <u>Ms. Estes Applied Technical and Specialized Knowledge to the Facts and Data of this Case, Such that Her Methodology is Reliable</u>

As she did with Dr. Maddox and Dr. Mueller, Merritt claims Ms. Estes developed methodology in this case. Ms. Estes, however, did not create any methodology. Instead, she applied the facts of this case to technical and specialized information regarding special education.

Ms. Estes is highly qualified to testify regarding special education and special education procedures, and her testimony is required, for Pickens makes groundless arguments regarding special education. Due to Ms. Estes' significant experience and skill in the area of special education and special education operations and procedures, her conclusions are sufficiently reliable. *See U.S. v. Garcia*, 447 F.3d 1327, 1335 (11th Cir. 2006) (the Court ruled that an experienced drug agent can testify regarding the methods of operation of the drug distribution business).

Merritt alleges Ms. Estes' conclusions are unfounded, but that is not so. Ms. Estes has the experience and skill to form opinions about Pickens' arguments that it is Mrs. Marshall's fault that Jake was abused and that it is Jake's fault Jake was abused. Ms. Estes also has the experience and skill to address Pickens' arguments about psychoeducation and the IEP process. Pickens blames Mrs. Marshall, saying it was Mrs. Marshall's fault Jake was abused (even though Pickens denies she

abused Jake) because Mrs. Marshall did not want Jake placed in psychoeducation. To anyone trained and skilled in special education, this is ludicrous for numerous reasons, one of which is that it defies the entire IEP process.  Ms. Estes knows this and her opinions in this regard are well founded and carefully formed.

Ms. Estes recommends Kennedy Krieger for Jake, given his regression, the abuse he suffered, and the fact he has been placed in psychoeducation, at the Marcus Institute, and twice in a psychiatric hospital (Laurel Heights).  Estes Dep., p. 118, lines 12-16, p. 173, line 24 to p. 174, line 4 (Ms. Estes did consider Laurel Heights).  Ms. Estes has recommended Laurel Heights for disabled individuals as well as Kennedy Krieger.  *Id.* at p. 118, line 24 to p. 119, line 11.  Given Jake's presentation, the abused he suffered, his regression, and the fact no other placement has worked, Ms. Estes recommended Kennedy Krieger because it is "the best in the country." *Id.* at p. 173, lines 2-23.

Merritt misleads the Court with her allegation that Ms. Estes testified that her reason for recommending Kennedy Krieger based upon her conversation with two employees there, as this is an incomplete statement of Ms. Estes' testimony. Defendant Merritt's Motion to Exclude Opinion Testimony of Jean Estes, p. 15. Merritt asserts Ms. Estes testified, when she was asked how she knew Kennedy Krieger is the best in the country, as follows:  "I have talked to two employees who have worked there, and I did research several years ago …." *Id.*  What Ms. Estes

testified, however, was "I have talked to two employees who have worked there, and I did research several years ago for another client, as I mentioned earlier. … I did research. It was five years ago. … I called Kennedy Krieger. I read articles on the methodologies used at Kennedy Krieger, and I spoke to other psychologists in the Atlanta area about their experience and their opinion of Kennedy Krieger." Estes Dep., p. 173, lines 9-23. Merritt, by omitting Ms. Estes' full testimony, also misrepresents that Ms. Estes allegedly did not research any other facility than Kennedy Krieger. Merritt claims to the Court that when asked if she had researched any other facility, Estes' answer was "No, I haven't." Defendant Merritt's Motion to Exclude Opinion Testimony of Jean Estes, p. 15. That, however, is not complete or accurate, for what Ms. Estes testified was "No, I haven't. With the exception of Laurel Heights. I did look into Laurel Heights, as I said earlier. I have another client who is placed there." Estes Dep., p. 174, lines 2-4.

Merritt also argues that because the experts for Plaintiff used the same exhibit list this means Plaintiff "manufactured" all the experts' reports, despite the fact they all testified, including Ms. Estes, that they wrote their own reports. *Id.* at p. 66, lines 1-5. That experts have the same exhibit list in no way suggests that Plaintiff wrote their disclosure reports.

### C. <u>Ms. Estes' Technical, Specialized Knowledge Will Assist the Jury</u>

Contrary to Merritt's claims, Ms. Estes' "scientific, technical, or other specialized knowledge, skill, experience, training, or education will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702 (a). As stated above, Pickens, Merritt, and Boyd raise numerous arguments about special education, its process, alleged actions and motive for those actions, and Ms. Estes has specialized knowledge, skill, and experience to apply to the facts to assist the jury in determining the ultimate decisions in this matter.

It is actually ludicrous for Merritt to argue that Ms. Estes can only offer that which an attorney could argue in closing or that Ms. Estes' knowledge is that of a lay person. Attorneys cannot argue in closing, without evidence in the record, IEP's, the IEP process, categorical paraprofessionals, corporal punishment in schools, psychoeducation, BIP's, FBA's, IST's, FCSD's policies and procedures, Rifton chairs and their proper use, restraint and seclusion in schools, special education and special education operation and procedure, GaPSC reporting requirements, educator ethical obligations, educational modeling, reinforcement of negative behavior, abuse in school settings and how it is handled, and many other relevant matters.

The extensive evidence in this case, just some of which is set forth in Plaintiff's Brief in Opposition to Merritt's Motion to Exclude Dr. Maddox's

Testimony on pages 11 to 17, establishes Pickens repeatedly and relentlessly abused Jake in the school setting for a three year period of time. Thus, Ms. Estes' specialized knowledge, skill, and experience and its application is supported by and consistent with overwhelming evidence (as well as the conclusion of Pickens' own experts). As such, Ms. Estes is competent to testify regarding the impropriety of Pickens' abusive actions in the school setting and those opinions are helpful to the trier of fact.

In 2007, using an outside agency, FCSD conducted an investigation of Pickens' abuse of Jake, and "[t]he investigation determined a clear pattern of inappropriate behavior on the part of Melanie Pickens which rises to the level of criminal assault and battery on a student…. [T]here [wa]s evidence that Ms. Pickens falsified an official school document in writing a report on the injury…. The investigation determined evidence that Melanie Pickens engaged in abusive and neglectful treatment of several other students in her care, in addition to Jake Marshall. These students suffered from severe mental and physical impairments and were non-verbal. Her inappropriate behavior and treatment ran the gamut from being too rough with special education students, to sheer meanness." Doc. 223-1( FCSD Report of Investigation, July 20, 2007).

Even Pickens' own expert psychologist concluded that what Pickens did to Jake was "child abuse" and "criminal behavior," and as a psychologist, he would

have reported Pickens for child abuse.  *See* Deposition of Tyler Whitney, July 11, 2013, relevant portions attached as Exhibit E to Plaintiff's Brief in Opposition to Exclude Testimony of Expert Samuel Maddox, p. 37, line 25 to p. 38, line 18, p. 39, line 18 to p. 40, line 18.  *See also id.* at p. 77, lines 1-24 ("psychologically abusive"), p. 129 ("horrific," "shocking," and "appalling"), p. 130, line 5 to p. 131, line 4 ("harsh and significant abuse").  Pickens' other expert tries to minimize Pickens' abuse but admits Pickens' behavior was abusive.  Deposition of Peter Ash, June 11, 2013, relevant portions attached as Exhibit H to Plaintiff's Brief in Opposition to Exclude Testimony of Expert Samuel Maddox, p. 334, lines 11-12.

While Ms. Estes may not testify as to motive, she is qualified to testify as to special education operations and procedures and the effect of them not being implemented in this case, and such will be quite helpful to the trier of fact.  In addition, Ms. Estes has specialized knowledge, skill, and experience with educator abuse reporting and procedures and GaPSC and FCSD policy and procedure and that knowledge and opinions formed therefrom will be helpful to the jury and will also serve to rebut arguments made by defendants, as well as Pickens' experts.  *See U.S. v. Lankford,* 955 F.2d 1545, 1552 (11th Cir. 1992) (citation omitted) ("It is an abuse of discretion 'to exclude the otherwise admissible opinion of a party's expert on a critical issue, while allowing the opinion of his adversary's expert on the same issue.'").

### III. <u>Conclusion</u>

For the foregoing reasons, Defendant Merritt's motion should be denied. Should this not be clear to the Court from the written pleadings, Plaintiff requests a *Daubert* hearing.

### IV. <u>Certification</u>

Pursuant to Local Rule 7.1D, the undersigned hereby certifies that the within and foregoing Brief was prepared with Times New Roman 14-point font, as permitted by Local Rule 5.1C.

This the 22nd day of August 2014.

   /s/ Chris E. Vance
Chris E. Vance
Ga. Bar No. 724199

Counsel for Plaintiff

**CHRIS E. VANCE, P.C.**
Suite 100
2415 Oak Grove Valley Road
Atlanta, GA 30345
Tel:  (404) 320-6672
Fax: (404) 320-3412
Email:  chris@chrisvancepc.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **Plaintiff's Brief** has been served electronically via email upon counsel for all Defendants.

This 22nd day of August 2014.

                                               /s/ Chris E. Vance
                                               Chris E. Vance
                                               Ga. Bar No. 724199

                                               Counsel for Plaintiff

**CHRIS E. VANCE, P.C.**
Suite 100
2415 Oak Grove Valley Road
Atlanta, GA 30345
Tel:  (404) 320-6672
Fax: (404) 320-3412
Email:  chris@chrisvancepc.com